## J. J. OWENS AND ANOTHER v. J. L. OWENS COMPANY AND ANOTHER.[1]

June 11, 1926.

No. 24,990.

**Plaintiffs entitled to relief against fraud.**

  In this, an action for the appointment of a receiver, an accounting of the affairs of the defendant corporation and of the stewardship of the individual defendant, *held*: That the findings of fact and conclusions of law made and entered by the trial court should stand.

  Corporations, 14a C. J. p. 971 n. 87.

Action in the district court for Hennepin county for the appointment of a receiver of defendant corporation and for an accounting by both defendants. The case was tried before Waite, J., who ordered judgment in favor of plaintiffs. Defendants appealed from an order denying their motion for a new trial. Affirmed.

*John N. Berg*, for appellants.

*M. H. Boutelle* and *A. H. David*, for respondents.

QUINN, J.

This is an action brought by the plaintiffs for the appointment of a receiver of the defendant corporation and for an accounting of its affairs and of the stewardship of the individual defendant. From an order denying their motion for a new trial, the defendants appealed.

J. L. Owens and Winnie Owens were husband and wife and resided in the state of Wisconsin. There were four sons: Robert J., Richard L., Owen L., and John J. In 1885 the father and John J., who was then 27 years of age and a blacksmith by trade, formed a copartnership for the purpose of the manufacture and sale of machinery at Minneapolis. To that end the family came to Minnesota, started a small plant in the city of Minneapolis. The copartnership continued and the business thrived until 1894 when a corporation

[1]Reported in 210 N. W. 59.

was organized under the name of J. L. Owens Company which took over the business and assets of the copartnership, the father becoming the president and John J. the secretary and treasurer, which offices they held until the death of the father in 1904. In 1890 Owen L. and Richard L. began working for the copartnership and continued in such occupation until the time of the commencement of this action.

There had been 610 shares of the par value of $100 issued. At the time of the father's death, the members of the family became owners of all the stock as follows: The mother a life estate in 20 shares; Robert J. 258 shares; John J. 174 shares; Richard L. 84 shares; and Owen L. 74 shares. Thereafter John J. sold 50 shares to Robert J. In 1904 John J. became president, Richard L. secretary and treasurer, and a little later, Owen L. became vice president. These offices were held by the same parties up to the time of the commencement of this lawsuit.

After the death of the father, Richard L. became the business manager of the defendant company, having complete control of all its business and finances. It appears that he possessed large business capacity and experience while the plaintiffs are men of limited experience, especially in the management of corporation affairs. Owen L. gave his attention exclusively to the work and management of the factory, and John J. having to do with the sales and shop management. The plaintiffs confided implicity in the judgment, integrity and fraternal goodwill of their brother, Richard L., up to the year 1923. Each of the brothers to this suit was frugal and contented with living upon a small salary and allowing the earnings of the corporation to remain in the business, receiving no dividends therefrom on their personal account.

In March, 1907, a corporation, known as the J. L. Owens Manufacturing Company, was organized under the laws of the state of Maine. Its first directors were residents of that state. They resigned however and the individual parties to this action became its directors and officers. Richard L. became its secretary and shortly owner of a large portion of its preferred stock and a controlling interest in its common stock. This company was conceived of for

the purpose of distributing products of the defendant company. It was in no sense a manufacturing concern.

Following its organization, Richard L. commenced negotiating with his brothers for the purchase of their stock in the defendant company. In December, 1907, he obtained from Robert J. the 308 shares which he then owned at $200 per share, paying 10 per cent cash and giving his note for the balance payable the following June. He represented to the plaintiffs that he had exchanged or proposed to exchange his stock in the defendant company for preferred stock in the manufacturing company on the basis of 3 shares of the latter for one of the former, and that a like exchange would be advantageous to them. Accordingly and in reliance upon such representations the plaintiffs agreed to such an exchange. Under date of February 7, 1908, but in fact at an undisclosed date considerably later, Richard L. caused to be issued to the manufacturing company a certificate for 590 shares of stock of the defendant company and receipted therefor as secretary of the manufacturing company, and thereafter retained the same. Such certificate represented all of the shares of the defendant company except the 20 in which the mother owned a life interest. At the same time Richard L. surrendered and canceled the certificates owned by the three brothers, as follows: John J. 124 shares; Owen L. 74 shares; and 392 shares owned by himself. At the same time and thereafter under sundry dates 372 shares of the preferred stock of the manufacturing company were issued to John J. and 222 shares to Owen L. in consideration for their shares in the defendant company. The amount of preferred stock issued to Richard L. is not disclosed by the evidence nor does it appear from the evidence whether, as between the three brothers, this transaction was understood to be a sale of stock by plaintiffs to defendant or to be a direct exchange between plaintiffs and the manufacturing company.

In July, 1908, a dividend of 60 per cent upon the 610 shares of stock of the defendant company was declared. No portion thereof was ever paid to the plaintiffs or either of them, the whole amount, $35,400, being used by Richard L. in part payment for the stock purchased from Robert J. There is testimony tending to show that Richard L. drew from the funds of the defendant company a further

sum of $12,000 which was used toward the payment of the stock from Robert J. but it does not appear whether this money was ever repaid to the corporation.

At a meeting of the directors of the defendant company held in January, 1914, it was reported that the manufacturing company was indebted to the defendant company in the sum of approximately $60,000, and a resolution was passed to the effect that arrangements be made at once by the defendant company to obtain from the manufacturing company a pledge of the stock held by the defendant company to secure its indebtedness. At a directors' meeting held in February following, it was reported that such action had been taken for the turning over to the defendant company of 590 shares of its stock held by the manufacturing company to secure the payment of said $60,000. Whereupon a motion was passed to accept the proposition of the manufacturing company and have the stock transferred and held as a pledge and security for said indebtedness.

Thereafter an action was instituted by the defendant company against the manufacturing company for the foreclosure of such pledged stock and such proceedings followed that said stock was bid in by defendant company at a foreclosure sale on December 27, 1915, for $63,195.82. On January 4, 1916, an order was made by the court confirming such sale and providing that the title to said stock should be wholly vested in the defendant company with leave to retire the same or reissue it if so advised. Such stock so sold constituted practically all the valuable assets of the manufacturing company and since its sale the assets of the manufacturing company have been of no practical value and the company ceased to do business of any kind.

The affairs of the defendant company have been successfully managed by Richard L. That company has at all times been and now is a solvent, going concern, has enlarged its plant and accumulated assets of great value. No dividend has ever been declared except the one of 60 per cent mentioned. The plaintiffs each received a salary of $100 per month and Richard L. $125 per month for their services. There were certain dividends paid to them out of the

funds of the manufacturing company but the amount thereof does not appear. Other than as above set forth, it does not appear that either of the three brothers ever received any financial benefit by reason of their holdings of stock in either of such corporations.

In the fall of 1923 Richard L. wrongfully excluded plaintiffs and each of them from all participation in the affairs of the defendant company, discharged them from service and expressly declared to them that he was the sole and exclusive owner of the company and all its property, and that neither of them had any interest in said company or the assets or stock therein.

The foregoing history and statements of the transactions between the litigants in this action were taken largely from the findings of the trial court which are full and clear and amply sustained by the proofs disclosed by the record.

Again and again and more particularly in his answers Richard L. asserted to plaintiffs his claim that the 590 shares of stock in the defendant company were subject to a lien in his favor prior and superior to the pledge of the same to the defendant company and to all right and interest of said company and of the plaintiffs in such stock, to secure an indebtedness owing to him from the manufacturing company, the exact amount of which is not disclosed. It does however appear that such alleged indebtedness arose out of or had to do with the transfer of the 590 shares of stock of the defendant company.

The trial court correctly found that the evidence fails to show the making of such agreement or the existence at any time of such a lien in favor of Richard L. The court also found that no such agreement was ever made or that such a lien ever existed. It further found that, if such agreement was in form made between Richard L. and the manufacturing company, the same was a secret agreement and never disclosed to plaintiffs or either of them prior to about the time of the commencement of this action; that the same was contrary to assurances given plaintiffs by Richard L. that he was merely disposing of their stock in the defendant company to the manufacturing company for the same proportionate consideration,

in reliance upon which plaintiffs were induced to part with their stock in violation of the fiduciary obligation of Richard L. to them and was therefore fraudulent and void as to the plaintiffs and each of them.

In April, 1924, Richard L. caused to be issued on the stock book of the defendant company to Owen L. certificates for 84 shares of its stock, and to John J. for 124 shares, but none of such certificates have been delivered to plaintiffs or either of them, but wrongfully withheld by Richard L. under claim of lien referred to. At the same time, Richard L. caused to be issued to himself certificates for 389 shares and 6 certificates of one share each to divers others persons not parties to this action.

It was conceded in the amended answer and upon the trial that John J. was the owner of 124 shares and Owen L. of 74 shares of stock in the defendant company and the court found that plaintiffs are the owners and entitled to the possession of the respective number of shares, free and clear of any lien or other claims of the defendants or either of them.

The court further found that the records of the defendant company were so loosely and inaccurately kept by its secretary and the dates of entries in the stock book are at such variance from the actual dates of the transactions to which they refer, that it cannot be determined from the evidence who were the recorded owners of the stock nor in what amounts the same was held by such owners when the stock dividend referred to was declared, but that plaintiff, Owen L., was then the actual or equitable owner of 74 shares and John J. the owner in like manner of 124 shares and, as such, were entitled to receive, respectively, $4,440 and $7,440 out of the proceeds of said dividend; that, prior to the discharge of plaintiffs from the employment of the defendant company in 1923, plaintiffs justly understood and believed from the conduct and representations of Richard L. that he was managing and intending to manage all of the affairs of the defendant company to their mutual benefit in proportion to their respective interests; that, for such reason and in full reliance upon the defendant, Richard L., they did not demand

their portion of dividends so declared but permitted the same to be paid out by Richard L. as heretofore stated, and thereafter refrained from asserting their rights and claims thereto as they might have done; that, with like understanding and reliance in Richard L., they permitted other moneys to be by him withdrawn and used out of the funds of the defendant company to pay for stock purchased by him from Robert J. and thereafter forbore to assert their claim and right thereto.

The court further found that in truth and fact the defendant, Richard L., did not manage the affairs of the company, during his stewardship, for the joint benefit of the plaintiffs and himself or in accordance with the reliance of plaintiffs or in conformity with his fiduciary obligations but, on the contrary, managed the same with the unjust and wrongful accumulation in his own hands of power over defendant company and the enhancement of his own interest therein and future profits therefrom, of which plaintiffs had no knowledge or notice until the fall of 1923; that the appropriation and retention by Richard L. of such dividends and other funds so drawn from the defendant company and used by him and not thereafter accounted for, were in fraud of the rights of plaintiffs and that plaintiffs have not been guilty of laches and delays in any way prejudicial to their rights sought to be asserted in this action.

In its conclusion of the findings of fact, the court found that, by reason of the premises, the confidence of plaintiffs in the defendant Richard L., which formerly existed, has been destroyed and plaintiffs justly regard said defendant with distrust and suspicion and justly fail and refuse to place further reliance upon him for the protection of their rights and interests in the defendant company, and are unable as stockholders to adequately protect their own rights and interests therein; that to secure such protection they have no adequate remedy at law and are entitled to appropriate relief.

Upon a careful perusal of all the evidence as disclosed by the record herein, we are satisfied that the findings of fact made by the trial court and the conclusions drawn therefrom are fully justified.

Affirmed.